EMMA K. ROSS ET AL. v. THE CITY OF LONG BRANCH.

Argued March 1, 1906—Decided May 19, 1906.

1. The power to improve public parks, conferred upon city councils by the act of 1903 (*Pamph. L.* 1903, *p.* 292), includes the power to erect in the park a building for public purposes.
2. Where the proposed building, called a casino, is adapted for public purposes, the court will not assume that it is to be used for other purposes.
3. Where a mayor of a city accepts the office of sheriff of the county, but continues in office as mayor *de facto,* a contract signed by him as mayor will not be set aside upon an indirect attack by *certiorari* to which he is not a party.

On *certiorari.*

Before Justices GARRISON, GARRETSON and SWAYZE.

For the prosecutors, *Joseph Coult.*

For the defendants, *Robert H. McCarter* and *Thomas P. Fay.*

The opinion of the court was delivered by

SWAYZE, J.  This case involves the validity of a resolution awarding a contract for the building of a casino upon a tract of land acquired by Long Branch for a public park.  The objections urged upon the argument were—*first,* that the act governing Long Branch does not authorize the building of a casino; *second,* that the resolution submitting the issue of bonds to the people did not suggest such a use of the proceeds of bonds; *third,* that the proceedings were by resolution, and not by ordinance; *fourth,* that C. Asa Francis, who signed the contract as mayor, was at the time holding and exercising the office of sheriff of Monmouth county, the claim being that by statute his acceptance of the latter office rendered his commission for any other civil office null and void.

1. Long Branch is governed by chapter 168 of the laws of 1903 (*Pamph. L., p.* 292), as amended in 1904 (*Pamph. L., p.* 346). Section 14 empowers the city council to make and establish such ordinances, other than those specifically mentioned in section 13, as they may deem necessary to carry into effect the powers and duties conferred or imposed on them. Among the powers conferred on them is the power to raise money by tax for acquiring public grounds and parks, and for maintaining, regulating and protecting the same (section 36) ; the power to lay out and open any public park or public square and to condemn land for the purpose (section 53) ; and the power to provide for, construct, regulate, protect and improve the parks, public burial grounds or other public grounds in the city (section 13, paragraph 13, as amended). *Pamph. L.* 1904, *p.* 347.

We think these powers sufficient to include the power to improve newly-acquired parks as well as parks already owned by the city. It was rather suggested than argued that the statute did not authorize the improvement of the former class. The force of the argument was directed to the point that the erection of a casino was not an improvement of the park. We do not think it necessary to define the word "casino." Obviously, it is a building the use of which may vary from time to time. It is enough, for the present purpose, to say that the proceedings disclose that the building to be constructed is intended for public purposes, either for public amusement or convenience. Buildings used for such purposes are not uncommon in public parks, and serve a useful purpose not foreign to the purpose of public recreation for which parks are meant. Calling it a "casino" does not alter its character. We think that such a building may fairly be called an improvement. Buildings are commonly spoken of as improvements to the land. A similar opinion was expressed by this court in *Knight* v. *Cape May,* 32 *Vroom* 149, where Justice Collins suggested that the charter of Cape May authorized the erection of a pavilion.

2. The resolution submitting to the voters the issue of bonds states as one of the purposes for which the proceeds

are to be used the erection and maintenance upon the ocean front of suitable buildings or pavilions for public purposes. It is not questioned that the proposed building is to be upon the ocean front, and the purpose seems to have been fairly within the terms of the resolution. The proposed casino is adapted for public purposes and we cannot assume that it will be used for any other.

3. After the vote in favor of the bond issue, and on March 27th, 1905, an ordinance was passed, one of the objects of which, as expressed in the title, was to provide for, erect and construct public casinos and public pavilions along the ocean front. This ordinance created a commission for this purpose. On August 14th, 1905, another ordinance was passed to provide for, construct, regulate, protect and improve a park. After providing that the city acquire certain specified lands, it ordained that the property be improved by the alteration, repair or removal of the buildings on the land and the erection of suitable buildings to be used for public purposes; that $70,000 be appropriated for the purpose of acquiring the land and that such further sum be appropriated as the city council from time to time might deem necessary to carry into effect the provisions of the ordinance. The previous resolution of July 10th had appropriated the money generally; the ordinance limited the amount to be spent for land and left the balance subject to future action. If the ordinance is inconsistent with the resolution, it supersedes it. The statute provides that whenever an ordinance has been passed for making improvements, further proceedings may be by resolution (section 55). This provision justifies the award of the contract by resolution.

4. There is no force in the objection that because the mayor's commission became by statute null and void by his acceptance of the office of sheriff the contract is not properly executed. Mr. Francis appears by the case to have been still mayor *de facto,* and his acts as such are not open to question in this proceeding; his right to the office must be directly attacked in a proceeding to which he is a party. *Oliver* v.

*Jersey City,* 34 *Vroom* 634; *Brinkerhoff* v. *Jersey City,* 35 *Id.* 225.

In the latter case, the present Chancellor said it was universally conceded that the power of an officer *de facto* extends to binding his municipal corporation by the issue of bonds and the making of other contracts within the scope of the authority of the office he acts in.

We find no defect in the proceedings under review; they should be affirmed, with costs.