SEA ISLE CITY REALTY COMPANY, PROSECUTORS, v. SEA ISLE CITY ET AL.

Submitted December 3, 1909—Decided January 31, 1910.

1. The language of a dedication to a seaside resort that the *locus in quo* "shall forever remain open and unobstructed for public use," is not inconsistent with the erection thereon of a music pavilion for public entertainment.
2. Where the city has obligated itself under the terms of a dedication to pay for a music pavilion, which is in public use, a writ of *certiorari* attacking the power of the city council to construct the pavilion will be dismissed for laches.

On *certiorari.*

Before Justices REED, BERGEN and MINTURN.

For the prosecutors, *Charles K. Landis, Jr.*

For the defendants, *James M. E. Hildreth.*

The opinion of the court was delivered by

MINTURN, J. This writ of *certiorari* brings up for review a certain resolution passed by the common council of Sea Isle City on the 1st day of April, 1909, by which a dedication of that portion of the beach between Marine Place and the Atlantic ocean was accepted; and also a contract for the construction of a music pavilion on the lands so dedicated entered into by resolution of the common council with the defendant Arnett.

The contract only is challenged, and the ground of attack diversified by the reasons is, that the city had no legal right to utilize the dedicated lands for the purpose of erecting a music pavilion thereon.

The right of the city to provide for public musical entertainment, and its right to appropriate moneys for the regulation, improvement and protection of the public grounds and parks, cannot be (and it is not) challenged, since such powers are clearly and expressly conferred by chapter 52 of the laws of 1899. *Pamph. L., p.* 96. But the insistment is that while this power may be exercised on public property, the *locus in quo,* although dedicated to public uses, is impressed with a limited dedication by the following restriction contained in the deed of dedication: "Under and subject to the condition that the strand of the Atlantic in front of said lots between Marine Place and low-water mark, shall forever remain open and unobstructed for public use," which dedication was accepted by resolution of the common council. Under the power conferred by the legislation referred to, the common council provided a band of music, and then sought by the contract *sub judice,* to provide a pavilion for the band. A resolution of the common council provided for its erection on the south side of Ocean avenue and on the east side of Marine Place, and the contract in question was thereafter executed.

A boardwalk had been constructed, and rebuilt and repaired by the city, on the oceanward side of Marine Place, which runs parallel with the ocean, and is the street nearest its shores, the beach intervening.

It is doubtless true, as contended for by the prosecutor, that his ownership to the centre line of Ocean avenue would, if extended across Marine Place to the ocean, bisect this pavilion; but this right of ownership is subject to the public use, expressly conferred by the deed of dedication, and he took title *cum onere* and subject to this public easement. *Jersey City* v. *Morris Canal Co.,* 1 *Beas.* 547; *Ayres* v. *Pennsylvania Railroad,* 19 *Vroom* 44; 13 *Cyc.* 492.

This conclusion results in presenting for consideration the question, whether the terms of the dedication that the *locus*

*in quo* shall "forever remain open and unobstructed for public use," contain within themselves an implied prohibition against the erection of a music pavilion.

Under subdivision 5 of section 34 of the act of 1889, whereby the common council are empowered to raise money to regulate, improve and protect the public grounds and parks, the power is conferred to expend money for music, and it may well be contended, keeping in mind the purpose which actuates the establishment of a seaside resort, and which compared with our other cities is *sui generis;* and the object of the legislature in conforming legislation to meet such a purpose, that the limitation that these lands shall be retained for "public uses" must be intended to mean, "public uses" consonant with the character and general polity of the place, and not clearly inconsistent with the grant. . *Ross* v. *Long Branch,* 44 *Vroom* 292; *Knight* v. *Cape May,* 32 *Id.* 149.

But we do not find it necessary to rest our determination upon that contention; for we find in the testimony that this pavilion has been erected; and that it is used by the public generally as well as by the band. We find that the contract was executed on the 12th of March, 1909; that the writ was allowed on June 8th, 1909, and that the pavilion was built in that interval. The city has thus obligated itself to pay for a completed structure, which its people are using and enjoying, and the prosecutor is therefore, upon well-settled principles of estoppel, precluded from attacking this contract upon this writ. *McKevitt* v. *Hoboken,* 16 *Vroom* 482; *Hildreth* v. *Rutherford,* 23 *Id.* 501; *Rosell* v. *Neptune City,* 39 *Id.* 509.

If it be contended that the building in question is a purpresture or a nuisance, the legality of its construction and its legal existence upon the *locus in quo* can be otherwise determined. *Knight* v. *Cape May, supra.*

The writ will be dismissed.